UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURJIT SINGH,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-01322-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART PETITION FOR WRIT OF HABEAS CORPUS<br><br>(A-Number 221-349-677)<br><br>(Doc. 1)<br><br>**7-Day Objection Period** |

Petitioner Gurjit Singh ("Petitioner"), a federal immigration detainee proceeding by counsel, initiated this action on February 14, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a contemporaneously-filed motion for temporary restraining order ("TRO") while in custody of Immigration and Customs Enforcement ("ICE") at the Golden State Annex Detention Facility in McFarland, California.  (Docs. 1, 2).  Respondents are Warden of the Golden State Annex Detention Facility, Kristi Noem, Pamela Bondi, ICE, and the U.S. Department of Homeland Security (collectively, "Respondents").  *See* (Doc. 1 ¶¶ 24-28).

The presiding district judge denied Petitioner's TRO motion as untimely and referred the matter to the undersigned for a determination on the merits of the petition.  (Doc. 6).  For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted in part as to Petitioner's claim for violation of his procedural due process rights under the Fifth Amendment to the U.S. Constitution ("Count One").  (Doc. 1 at 12-13).

1

## I.     Relevant Background

The relevant facts are taken from the parties' respective briefings.  *See* (Docs. 1, 2, 7). Petitioner is a citizen and native of India who unlawfully entered the United States through an unknown location before he was arrested by Border Patrol on November 15, 2024, near Boulevard, California, and served a Form I-860 expedited removal notice.  *See* (Doc. 7 at 1-2); *see id.* at 10 ("Ex. 1") (September 26, 2025, Form I-213 Record of Deportable/Inadmissible Alien); (Doc. 1 ¶ 2).  On December 18, 2024, USCIS served Petitioner a Form I-862 Notice to Appear, and on December 27, 2024, ICE released Petitioner from custody on interim parole.  (Doc. 7 at 2).

On January 16, 2025, Petitioner was arrested by San Bernardino sheriff's deputies for possession of a controlled substance for sale.  *Id.*; *see id.* at 13-17 ("Ex. 2") (January 30, 2026, criminal history record of Petitioner).  As of the date of Respondent's filing of a response to the petition (March 18, 2026), there is no record evidence that Petitioner ever has been convicted of any criminal offense, including in relation to his January 2025 arrest.  *See id.* Ex. 1 at 11 ("Conviction date: Pending"; "Disposition/sentence: N/A").  On September 26, 2025, during a scheduled check-in appointment with ICE, Petitioner "was targeted for immigration arrest and custody redetermination based on his January 2025 felony arrest for controlled substance/sale[,]" was placed in immigration custody, and had his interim parole revoked based thereon.  *Id.*; Ex. 1.

The undersigned takes judicial notice that Petitioner has a master hearing in immigration court scheduled for May 20, 2026, with a docket date of January 3, 2025.[1]  *See id.* at 19 ("Ex. 3") (March 18, 2026, EOIR Automated Case Information page indicating Petitioner's master hearing was set for March 25, 2026).

Petitioner alleges that prior to his detention, he resided in Sacramento, California, and applied through USCIS for asylum.  (Doc. 1 ¶¶ 62, 63).  He alleges that he did not file a bond

---

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 17, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

request based on the immigration judge's position that she lacked jurisdiction to provide any meaningful custody review and that denial of bond was inevitable under *Matter of Yajure Hurtado*. *Id.* ¶ 67.

## II.    Governing Authority

### A.    The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.    Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

#### 1.    Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at

3

108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

**2.      Expedited Removal and Mandatory Detention (§ 1225)**

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

4

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the

applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply

expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

### C. Parole Revocation

In *Y-Z-H-L v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision.  The court held:

Section 1182 . . . has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in required detention, to be "paroled" into the United States. This provision, at issue in this case, states:

The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.**

8 U.S.C. § 1182(d)(5)(A).

*Id.* at 1133 (emphasis added). *Y-Z-H-L* determined that under the Administrative Procedure Act, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious or an abuse of discretion. *Id*. at 1146-47. An agency acts arbitrarily and capriciously by failing to make a reasoned determination or where the agency fails to "articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*. at 1144 (footnote and citation omitted). Parole revocations in the context of the INA must occur on a case-by-case basis and may occur "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id*. at 1133 (quoting 8 C.F.R. § 212.5(e)). 8 C.F.R. § 212.5(e) requires written notice of the termination of parole except where the immigrant has departed or when the specified period of parole has expired.

Applying *Y-Z-H-L* and § 212.5(e), in *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025), the court found that the INA requires a case-by-case analysis as to the decision to revoke humanitarian parole:

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." *See id*. There is no indication in the record that the government conducted any such analysis here. On the contrary, the letter Mata Velasquez received merely stated summarily that DHS had "revoked [his] parole." Docket Item 62-1 at 5. Thus, there is no indication that—as required by the statute and regulations—an official with authority made a determination specific to Mata Velasquez that either "the purpose for which [his] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [his] continued presence...in the United States." *See* 8 C.F.R. § 212.5(e)(2)(i). As a result, DHS's revocation of Mata Velasquez's parole violated his rights under the statute and regulations. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

*Id*. at 146. And in *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court reached a similar conclusion relying on the Due Process Clause:

> . . . **even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody**. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court

joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

*Id.* (emphasis added).  Other courts, including this Court, have held similarly.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

## III.    Exhaustion

### A.    Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).  The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)).  "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).  "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this

discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B.    Analysis

Petitioner asserts that he has exhausted his administrative remedies to the extent required by law, as he sought custody redetermination but "the Immigration Judge took the position that she lacked authority to grant bond under *Matter of Yajure Hurtado*, rendering any further bond request futile" and that no further administrative remedy is available that would address his constitutional violations raised in his petition. (Doc. 1 ¶¶ 54-56). Respondents do not address exhaustion of administrative remedies in their filings. *See* (Doc. 7).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Petitioner's allegations that he is unable to obtain review of his custody by an immigration judge pursuant to the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and DHS's position that any citizen who entered without a visa is ineligible for a bond hearing, and Respondents do not otherwise address exhaustion of administrative remedies in their opposition to the petition. *See* (Doc. 1 ¶¶ 54-56); (Doc. 7); *Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022). Further, the BIA has held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile. *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)).

For these reasons, the undersigned recommends that the prudential exhaustion requirement

10

be waived for Petitioner's claim for habeas corpus relief. *See*, *e.g*, *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

## IV.   Discussion

Petitioner asserts three causes of action in his petition: (1) violation of procedural due process under the Fifth Amendment to the U.S. Constitution ("Count One"); (2) violation of the Immigration and Nationality Act ("INA"); and (3) violation of the Administrative Procedure Act. *See* (Doc. 1 at 12-15).

As set forth below, because the undersigned finds that Respondents have violated Petitioner's constitutional rights to procedural due process, and because Petitioner's other claims seek the same or similar relief (*i.e.*, for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified at a custody hearing before a neutral arbiter in which the government bears the burden of proof), the undersigned forbears from addressing Petitioner's other claims.

### A.   Procedural Due Process

#### 1.   Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

2.    Analysis

On Petitioner's as-applied procedural due process challenge to his continuing detention by immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and …[(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

12

Petitioner has an underlying, continuing liberty interest in being free from re-detention. Specifically, Petitioner was released by ICE on interim parole on December 27, 2024, over eight months prior to his re-detention on September 26, 2025. *See* (Doc. 1 ¶ 22); (Doc. 7 at 2); Ex. 1. In releasing Petitioner in their discretion, immigration officials necessarily determined that Petitioner did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *4-5 (N.D. Cal. Sept. 5, 2025), *appeal dismissed*, No. 25-6999 (9th Cir. Apr. 2, 2026) (reconciling parole under § 1225(b)(1) with "conditional parole" under § 1226(a), finding that "when ICE affirmatively chooses to release an individual on parole, it has made the determination that it no longer intends to fast-track [the individual's] removal and that it will proceed with the standard removal process under 8 U.S.C. § 1229a" and "because Aviles-Mena was 'paroled into the United States,' he cannot be subject to expedited removal under [§ 1225(b)(1)] and has a protectable liberty interest [subject to procedural due process protections].").  Accord *Rodriguez Diaz*, 53 F.4th at 1196.  Petitioner remained released from immigration detention for a significant amount of time, approximately eight months. (Doc. 1 ¶ 22); (Doc. 7 at 2); Ex. 1.

The undersigned agrees with other courts and other judges of this Court that noncitizens released from immigration custody on general orders of supervision, on their own recognizance, and on parole have a liberty interest in their freedom that implicates protections under principles of procedural due process. *See Aviles-Mena,* 2025 WL 2578215 at *5-6 (undertaking procedural due process analysis under *Mathews* following determination that petitioner was paroled into the United States); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process."); *see id*. ("[E]ven if immigration detainees must wait months before a periodic re-review of their detention, those

13

already released on immigration bond possess an interest in their continued liberty, which grows over time, and a due process right to a hearing before being re-detained."); *Nak Kim Chhoeun v. Marin*, 442 F. Supp. 3d 1233, 1245 (C.D. Cal. 2020). Accord *Doe*, 787 F. Supp. 3d at 1094 (considering in connection with a petitioner's procedural due process claim that "[t]he lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty"); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute"). *Cf. Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB, 2026 WL 101840, at *9-10 (E.D. Cal. Jan. 14, 2026) (finding a petitioner mandatorily detained pursuant to § 1226(c) did not have a protectible liberty interest because he had remained in continuous custody and never released on supervision).

Because Petitioner has shown he has a protected liberty interest to remain free from re-detention based on his discretionary release on parole by immigration authorities on December 27, 2024, the undersigned must determine what process is due before the government may terminate that liberty interest. To determine this, the undersigned considers the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id*. at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has shown he has a significant private interest in remaining on release from detention. He had been released from immigration custody for over eight months prior to his re-detention. Petitioner asserts that he has lived in Sacramento, California, and timely

14

and consistently appeared for all hearings in immigration court, has no history of being a public threat and no criminal history, is not a flight risk, and has every incentive to meet all requirements for his asylum proceedings. (Doc. 1 ¶¶ 62, 64, 69-70). Petitioner's continued liberty interest in remaining on release is undermined by his re-detention without a bond hearing. *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause…. The lengthy duration of his conditional release as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where he has not received any bond or custody redetermination from a neutral adjudicator. *Id*. at 1094; *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Because there were no procedural safeguards to determine if Petitioner's re-detention was justified, the probable value of the additional procedural safeguard of a bond hearing to determine whether Petitioner is a flight risk or a danger to the community is high such that this factor weighs in favor of granting a bond hearing. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL 3145562, at *6. Although Respondents assert that Petitioner's arrest by immigration authorities, re-detention, and revocation of his parole was based on "a custody redetermination based on his January 2025 felony arrest for controlled substance [possession]" (Doc. 7 at 2), the record does not show that such "custody redetermination" was provided by an immigration judge or that Petitioner ever received a bond hearing to justify his re-detention. That ICE *sua sponte* made a custody determination after being apprised of Petitioner's January 2025 arrest—on charges which have not resulted in any conviction—without any such determination made by a neutral arbiter is insufficient to address the risk of erroneous deprivation of Petitioner's liberty interest. Therefore, this factor weighs in favor of granting a bond hearing.

Third, the government's interest in detaining Petitioner without a bond hearing is low. *Doe*,

787 F. Supp. 3d at 1094 (citation omitted); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094.

In sum, the undersigned finds that, under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution through his arrest on September 26, 2025, and continuous and continuing detention thereafter.

**B.    Petitioner's Other Claims**

Because the undersigned finds that the Court may grant the full relief to which Petitioner is entitled in recommending that the writ should issue as to Petitioner's claim for violation of procedural due process (Count One), the undersigned declines to address Petitioner's other claims.

**C.    Relief**

The undersigned considers whether Petitioner is entitled to a pre-deprivation or post-deprivation bond hearing, and further, addresses what standards should apply at that hearing.

First, the undersigned concludes that Petitioner is entitled to a pre-deprivation bond hearing. As summarized above, although Respondents assert that Petitioner's parole was revoked because ICE *sua sponte* made a custody redetermination based on his January 2025 arrest for possession of a controlled substance, (Doc. 7 at 2), that charge has not resulted in any conviction of Petitioner. *See id.* ("There does not appear to be a disposition as to this charge."). Although a petitioner may be entitled only to a post-deprivation hearing where the government's assertion that the petitioner violated conditions of supervision or parole is "not obviously pretex[t]ual" (*Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025)), here, Respondents do not argue that Petitioner violated his parole conditions (*see generally* Doc. 7) and Petitioner's singular arrest without a conviction does not permit re-detention by immigration authorities without a bond hearing. *See, e.g., Elias C.M. v. Warden*, 1:25-cv-02043-TLN-EFB, 2026 WL 127612, at *3-4 (E.D. Cal. Jan. 16, 2026) (rejecting respondents' argument that detention

16

of petitioner without bond hearing was warranted given his arrest for spousal battery nine months earlier but where no conviction was obtained; ordering petitioner's immediate release).  Further, Respondents provide no evidence of "urgent concerns" warranting Petitioner's re-detention without a bond hearing given ICE waited approximately nine months after Petitioner's arrest by local law enforcement to arrest and re-detain Petitioner.  *See Guillermo M.R.*, 791 F. Supp. 3d at 1036; *Guzman v. Andrews*, No. 1:25-cv-01015-KES-SKO (HC), 2025 WL 2617256, at *7 (E.D. Cal. Sept. 9, 2025) (holding the government did not establish "an urgent need to detain [petitioner] before a pre-deprivation bond hearing could be held" where he was detained by immigration authorities approximately three years after petitioner's criminal conviction).

Second, Petitioner was released by ICE on parole on December 27, 2024, following his initial encounter and arrest on November 15, 2024—approximately nine months prior to his re-detention by immigration authorities in September 2025.  In releasing Petitioner, immigration officials necessarily determined that he did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").  Nevertheless, Petitioner has not been afforded a bond hearing before an immigration judge.

"Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz*, 53 F.4th at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).  "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ will order his release." *Id*. (internal quotation and citations omitted).

Given the undersigned's finding that Respondents proffered basis for re-arresting Petitioner (a *sua sponte* "custody redetermination" by ICE based on a singular arrest for a possession of a controlled substance charge that has been pending for over one year without conviction) does not

17

amount to a justified determination of Petitioner's risk of flight or danger to the community, the undersigned will recommend that the government bear the burden of establishing at the bond hearing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *E.g.*, *Singh v. Andrews*, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3248059, at *6 (E.D. Cal. Nov. 19, 2025) (requiring government to carry burden by clear and convincing evidence, notwithstanding disputed issues of facts involving the petitioner's alleged violation of release conditions); *M.V.I. v. Andrews*, No. 1:25-cv-01440-JLT-SKO, 2025 WL 3154403, at *13-14 (E.D. Cal. Nov. 112, 2025) (same). "Doing so is logical" because "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *M.R.R. v. Chestnut*, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *14 (E.D. Cal. Nov. 24, 2025) (relying on *Pinchi v. Noem*, 792 F. Supp. 3d 1025, at 1034, 1038 (N.D. Cal. 2025)); accord *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *8-9 (E.D. Cal. Nov. 22, 2025).

## V.     **Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Docs. 1, 8) be GRANTED in part as to Petitioner's procedural due process claim arising under the Fifth Amendment to the U.S. Constitution (Count I). *See* (Doc. 1 at 16-17); (Doc. 8 at 13-14).

2. Respondents be ORDERED to immediately release Petitioner.

3. Respondents be ORDERED to hold a bond hearing, prior to re-detaining or re-arresting Petitioner, before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a

flight risk or danger to the community or that there is a material change in his removal situation such that physical custody is legally justified.[2]

    4.   The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require.").  Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

///

///

///

---

[2] The undersigned also recommends the following:

If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here, SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondents SHALL provide a bond hearing in the timeframe required by law.

A party's failure to file objections within the specified time may result in that party's waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 20, 2026**    _____

UNITED STATES MAGISTRATE JUDGE